Case number 155530 USA ex rel TN Valley Authority v. 1.72 Acres of Land in TN et al. Argument not to exceed 15 minutes per side. Mr. Demarest, you may proceed for the appellant. Good morning, your honors. May it please the court. My name is Mark Demarest. I represent the defendant and appellant Carl Thomas in this matter.  This is the case where the TN Valley Authority condemned an easement to install a power line across our client's property. There's a permanent easement across 1.72 acres of land. And we had a trial in front of the magistrate judge to determine the amount of just compensation to be paid to the property owner. After the plaintiff presented its case and rested, the magistrate decided to take the case from the jury. We believe that that was an error and that the magistrate had essentially usurped the role of the jury as the trier of fact. One starting point for that is we did not have an expert witness at trial, not a retained or paid expert. Our sole expert was excluded. But our client, who's the property owner, also has his own expertise. He has other property and businesses in Coffey County, Tennessee, which gives him expertise. He has also been involved in rezoning property in Coffey County and is the owner of several hotels around the country. He's been involved in developing hotels. But I think the starting point is that the client's an expert witness. I believe he has expertise, Your Honor. He's not a retained expert. But in condemnation cases, it's well recognized that the property owner can testify as to the value of the property and the effect of an easement across the property on the value. You've got the background and knowledge. Just because he's a property owner doesn't give him a right to express an opinion outside his field of expertise, does it? I disagree strongly, Your Honor. There's case law dating back decades that the owner of a property has the right to testify about the value of that property. I think that's well established, whether or not... Personal knowledge, but as giving opinion evidence, I mean, the rules are quite clear. To give opinion evidence, you have to have background, knowledge, expertise, right? Even if you're party in the case. I don't agree with that, Your Honor. I think that in the case of property value, it's different from a lot of other situations. There's a lot of case law that the property owner can testify and give opinions as to the value. In addition to that, Mr. Thomas, in this case, had particular expertise. But I think that my starting point here, Your Honors, is that we have an expert witness who testified, an appraiser who testified on behalf of the TVA. Essentially what the magistrate judge said was that because we didn't have a paid appraiser on the other side, that there was nothing for the jury to decide. The case law indicates that a jury is not required to accept the testimony of an expert witness. And here we cross-examined the expert witness and gave the jury reasons to question, number one, his impartiality, number two, his conclusions that he reached that there was a 25 percent diminution in value of the 1.72 acres and that the easement had zero effect on the remainder of the property. And we believe that the magistrate judge erred by taking those questions for the jury. The jury was not required to accept that expert witness's testimony. They were allowed to evaluate his testimony, evaluate his credibility, and they could have decided, for example, that the 1.72 acres was entirely diminished in value. And if they had done that, that would have resulted in, even if you accepted the appraiser's valuation of $6,000 per acre as agricultural land, would have resulted in about a one-third increase of the amount of compensation over what the district court awarded. Did your client put on any evidence at all as to the before versus after value of the property? No, not in that sense, Your Honor, but that's not the only method by which property can be valued. So did we have an expert witness that said a different testimony than the appraiser about before and after? No, but we did strongly cross-examine their appraiser and I think indicated several flaws in his analysis, which we believe that the jury should have been allowed to consider. For example, the appraiser acknowledged that this was a permanent easement and that the TVA could have done and has the right to do more within that easement area than it has actually done. And he took some pictures and said, well, I don't think these power lines look too bad. But he also acknowledged that the TVA would have the right to put 10, 15, 20, 50, 100 more power poles in that easement. And that clearly would affect the value of the property, because one of the things that this appraiser said in the before and after, he said this property is 15% more valuable than the comparable properties because it has a view from the highway. And there are billboards on the property that produce rental income. So he said on the one hand, this property is more valuable because it's located next to the interstate highway between Chattanooga and Nashville. At the same time, he said that the easement, which affected that view, had no negative effect on the value. And we think that the jury was entitled to decide that question. What's the just compensation owed here? Whose burden is it to establish the value of the property? Is it yours or the government's? The diminution of value, I guess. Yeah, that's an interesting question, Judge. And we actually talked about it in the trial. I don't think that's clearly established in the law. But I also don't think it makes any difference, Ron. Well, you're the one requesting the compensation for the taking, right? Well, the Constitution requires just compensation. And the question is, what is the proper amount? Okay, so you don't concede that it's your burden to establish the proper amount for just compensation? Condemnation cases are very unusual, Judge Griffin. And I don't think it's not clearly established as to who bears the ultimate burden of persuasion. Assuming, well, you have burden of proof and burden of persuasion. Assuming it's your burden, which I always assumed it was, even if you completely impeach the government's expert, and so there is no expert at all, there is no testimony as to the diminution of value, I mean, how can you go to the jury? Are you just going to let the jury guess what the just compensation is without any credible value being put on it by anybody? Let me take that one example I used before, Judge. The expert witness testified that he believed the land as agricultural land was worth $6,000 per acre. Even if the jury had accepted that, they could have determined, based on the evidence in the record, that they thought that there was more than a 75% diminution in value of the easement parcel, the 1.72 acres, and that there was some effect on the remainder of the property because there was... What would they base that on if you don't have any expert testimony? Are they just allowed to guess? They can base that on the evidence in the record. What evidence is there, then, if you don't have experts either way? How do they base the verdict? Well, let me say, first of all, that this sort of comes back to your question about is our client an expert. Our client testified. That's what we're left with is your client's testimony? That's the only way the jury could have a reasonable basis for their... No, I think the jury is not required to just accept at face value the expert's testimony. They have to have evidence to support a verdict. You just can't let them speculate and guess, can we? Well, the question is, then, depending on what verdict they come back with, it may be a verdict that the judge determines is within the range of the evidence. If they came back with $5 million, I would say that's not supported by the evidence. If they came back with $20,000, $100,000, I believe that there's evidence in the record that would support such a verdict. Let's talk about the 1.72 acres. Our client testified as to how he believed that and why he believed that the restrictions of the easement essentially took all the value of the 1.72 acres. The appraiser said it took 75%. So the jury could decide somewhere in there. They could say that based on the scope of the easement, the fact it was permanent, our client's testimony that he really can't use that 1.72 acres for anything, but he still has to maintain it, he still has to pay the property taxes, he still has to insure it. The jury could have decided that that 1.72 acres was totally taken based upon the evidence. Therefore, even if they accepted the appraiser's testimony that the land was only worth $6,000 an acre, they could have concluded that the amount of just compensation was insufficient. Your client has to provide a basis for the statement that the land is not suitable for some other use. So then the question would be, what's the basis for your client's testimony in that regard? Other than his unfettered opinion. Well, let's talk about the 1.72 acres. The easement prohibits any construction of any structure. There are two billboards that are there. They can't be moved to any other location. They can't be rebuilt if they're destroyed. You can't put any more billboards on it. This is a property next to the highway. The billboards were already there, so that doesn't have anything to do with it, does it? No, but you could have potentially put additional billboards or different sizes. There are a number of issues that the jury could have taken into consideration. What we're really saying ultimately here is that what the magistrate judge did was to accept at face value the testimony of an expert witness whose opinions we believe were undermined by cross-examination but didn't allow the jury, the trier of fact, to decide whether they believed that expert witness or not. That essentially is the crux of the argument. The other issue is the exclusion of our expert witness. I'm sorry, I see that my time is up. Can you give me a rebuttal time to continue? Just 30 seconds, Your Honor. 30 seconds, so you'll have two and a half minutes for rebuttal. Thank you.  whether the presence of the electric transmission lines, these high-voltage lines, essentially prohibited or negatively affected and effectively prevented the use of this property for a hotel. And he had the expertise to give such an opinion based upon his experience in the hotel industry, and we believe that we are prejudiced by his not being allowed to give that testimony. Our client, through his testimony, provided the rest of the story. How about the alternative ruling by the district court that your expert, or maybe you didn't comply by furnishing a complete report of all his opinions and all the sources of his information that there was a violation of Federal Rule 26A to B, and therefore the violation of the rule itself excluded his testimony? How do you respond to that, if at all? There was an expert report provided, and we believe that it did provide all of the opinions and the basis. It's two pages, isn't it? Pardon me? It's two pages. It is, Your Honor, but it's a narrow conclusion. What he is essentially saying is, I'm an expert in the hotel industry. I've done 50 feasibility studies. I run hotels all over the country. I've authored a book on feasibility studies. I understand what the requirements are for a hotel, and that the presence of this high-voltage power line along the hotel makes this not a viable site, was his testimony. It wasn't a situation that required a 50-page report. It was a very narrow opinion based upon his experience. Well, the district judge ruled that that report didn't comply with the court rule, right? The district court ruled that, and we believe that was an error. Did you appeal that? Yes. Okay, and that's in your brief? Yes, I believe it is, Your Honor.  Thank you. You'll have your two-and-a-half minutes for rebuttal. Thank you. Thank you. Morning, counsel. You may proceed. Thank you, Your Honor. May it please the court. David Aliff from the TVA General Counsel's Office on behalf of the plaintiff appellee here this morning. I first wanted to address a question that I believe Judge Griffin asked of appellant's counsel. It's about the burden of proof in a condemnation matter. The law is very well established going back all the way to the Supreme Court's decision in the United States, X. Rel. TVA v. Powelson in 1943, that the landowner does, in fact, have the burden of proof in a condemnation action. And actually, in relation to the question about what is the scope of allowable testimony for a landowner that was discussed in appellant's opening, that's actually a very interesting question because what the advisory comments to Rule 702 do say is that a landowner is permitted to testify as to land value, and that's akin to 702-type testimony. However, I think it's a very different question as to whether a landowner is allowed to hold forth on various and sundry topics, which actually happened here when that landowner, as here, has not been disclosed as a 26A2C witness, and there's been an interrogatory that they will rely on expert testimony. And I think some guidance on this point would be very helpful for litigants in condemnation proceedings because it is an issue that often arises as what is the proper scope for a landowner to address. I also wanted to address a point that was raised about whether or not the jury could have concluded that the interest was totally taken or 100% taken. Here, this is a partial takings case, and going all the way back to the Supreme Court's decision in United States v. Kress, the court said that if there's any substantial value left in the interest, then it's treated as a partial takings case, and therefore 100% damage cannot be accorded. The third point I would make is that, in answer to the question I believe Judge Gilman asked, was whether there was before and after evidence from the landowner. A per curiam decision from this court in 2004 in the Madison County case said that, in a condemnation proceeding, that is the correct measure of damages for a landowner to show the value of the land prior to the taking and then the value of land after the taking. So that has been held by this court. I would also just briefly mention the billboard issue that did come up at trial, but there was no evidence put on by the landowner as to what value or what damages should be for the billboard issue. So we argued in our brief that that issue has, in fact, been waived on appeal under Thurman v. Yellow Freight, and even if it hadn't, there was testimony at trial from the landowner himself and from the government's expert that the billboards, in fact, had not been taken. They're still sitting there today, and as a matter of Tennessee law, they cannot be expanded in any way. So what I think is very helpful here in the court's analysis of all the issues before today is the Supreme Court's decision in the United States v. Reynolds. That is really the lens through which these issues must be analyzed, and in Reynolds what the court said was that except for the single issue of just compensation, all of the issues, factual and legal, are for the trial judge. The court went on to point out that the jury's role is constrained to the narrow issue of determining just compensation within the ground rules established by the trial judge. The court said that in a condemnation proceeding, a trial judge occupies a much broader role than in a conventional jury trial setting. And here, the second fundamental error with appellant's court theory is this notion that on the day the property was purchased, it magically transformed into a hotel business property, despite the fact that the record showed that the landowner, the appellant, bought a farm and paid farmland prices for it, and despite the fact that he purchased the property with knowledge that TVA intended to construct a transmission line and needed the easement right away over the subject property. And this erroneous notion permeated this entire case because it resulted in the three decisions made by the district court that are before you on appeal today. The first that was alluded to was the decision to exclude the landowner's proffered expert, Mr. Wilson. Under Reynolds and the decisions of this court, that was well within the trial judge's gatekeeping function, which provides that a trial judge has considerable leeway to either admit or exclude evidence. And I would just point the court to the First Circuit's decision in the 33 Acres case, where they said that gatekeeping function is particularly pronounced in a condemnation proceeding under Reynolds. And so here, the court found there were two bases for excluding Mr. Wilson. Both of those were well within the trial court's discretion and should be affirmed. The second issue before the court today is the highest and best use issue. Whether the district court properly exercised its discretion to preclude the appellant's highest and best use testimony. That is the hotel business idea. This court in the City of Detroit case in 2006 said under Reynolds, highest and best use is one of those questions that is appropriate for a trial judge to decide. And here, the issue is fair market value on the date of taking. And highest and best use is simply a concept whereby the relevant market is determined. The Supreme Court has been very clear that only transferable value is compensable, that fair market value does not depend on a landowner's particular needs for a property, and that value doesn't fluctuate based on the demands of the condom nor or the landowner. And so here, when we're dealing with a vacant tract of raw land, the only thing that matters is what is the fair market value of that raw land. And so it doesn't matter who buys it or for what purpose. And the district court correctly began its analysis with the rule that there's a presumption in condemnation cases that the use as of the date of taking is that property's highest and best use. Here, the evidence was overwhelming that the property was being used for agricultural purposes. It was situated in a rural part of Coffey County, Tennessee. There was discussion that it was near the interstate, but the closest exit was one of those exits where there are no amenities. It's simply access to a two-lane rural highway. And the evidence also showed at trial that the first thing the landowner did upon purchasing the property was to sign a new three-year farm lease for the property and to have the property green-belted for a lower agricultural tax assessment. Let me ask you this. Now, the landowner purchased the property knowing that there was going to be an easement or an easement was being sorted at the time and all of that. Why wouldn't the issue of value be predicated on whether the new landowner was getting proper value of the land with the easement on there since he knew the easement was coming when he purchased the property? As a legal issue, that doesn't seem to have gotten lost in the trial. If I understand the question, the testimony was clear that the landowner did have knowledge that the transmission line was going to be built when he bought the property. Sure, but in terms of valuing the land with the easement since he knew the easement was coming when he bought the property, did the judge below decide the legal issue predicated on the land with the easement? Yes, I believe the trial judge did, Your Honor. I think that's embodied in the trial judge's highest and best use determination. Ultimately, that determination was the highest and best use was for continued agricultural purposes. And with that highest and best use, the property being used as an agricultural tract, the testimony from the government's appraiser was that the easement could continue to be used for that highest and best use, that agricultural purpose. Okay, if it was agriculture, the easement wouldn't affect the use. That's correct, and there was ample testimony that it could continue to be farmed and used in that manner. Yes, Your Honor. So here the court based its highest and best use decision on two factors. The first was the trial judge found the landowner's testimony about a hotel business to be speculative and unsupported by market data. That decision is clearly supported by this court's decision in the city of Detroit case where in a somewhat analogous fact pattern, the landowner there had purchased the property with knowledge of the government project that resulted in the condemnation case, and the lower court excluded the landowner's proposed highest and best use, finding it unsupported by market data. This court affirmed as an exercise of the trial judge's broad discretion under the Supreme Court's decision in Reynolds. The second basis for the trial judge's determination here was he found that the proposed use for a hotel was not legally permissible. Here there was testimony that the property was zoned for agriculture or agriculture-related purposes, and there was simply no testimony from the landowner that that restriction could be removed any time in the reasonably near future, and there was no testimony that a variance could have been obtained. There was simply no evidence on that point. And we'll just point to the First Circuit's decision in the 33 Acres case as being directly on point for that proposition where similar testimony was excluded. And so these cases support the trial judge's decision to preclude that testimony from consideration as an appropriate exercise of discretion. Lastly, I would come to the issue of the trial judge's decision to grant the government's motion for judgment as a matter of law. That is, the appellant was fully heard on that issue, and he had an option to understand that this was a serious issue. Even at the close of the government's motion for judgment as a matter of law, the trial judge specifically said this is a significant event and there are two issues. Those two issues are highest and best use and whether the landowner has come forward with any viable evidence, any legally sufficient evidence on the issue of valuation. And so the landowner was fully apprised of that. And here what the court concluded was the appellant's testimony had not been terribly helpful. There was testimony that value was couched in a price-per-day figure based on what it cost to park a car $50,000 of legal fees? $50,000 of legal fees, yes, Your Honor, which would not be compensable in a condemnation case and what it cost to park a car. And what the court concluded, the trial judge concluded, was that bore no discernible relationship to the fair market value of land. And for that reason, and under this court's precedent alluded to earlier, that before and after value is required, which the landowner did not offer, and this court's precedent that says that sales of comparable properties are the best evidence of market value. There was none of that from the appellant's side. There was only testimony to that effect from the government's appraiser, Mr. York. And so based on that, the court concluded that the only legally sufficient evidence was that offered by the government, that just compensation should be $10,000. And I would just say under Reynolds, the Supreme Court said it is for the trial judge to tell the jury the criteria it must follow in determining what amounts will constitute just compensation. So it is the government's position that that decision falls within the ambit of Reynolds. Lastly, I would just point out briefly that as this court pointed out in the city of Detroit, there's a fairness component to the just compensation clause in the Fifth Amendment. And here that was adhered to with the trial judge's decision to grant judgment as a matter of law because the landowner had purchased the property in December of 2012 for about $4,700 per acre, and then the date of taking was about six months later in May of 2013, and ultimately the just compensation award was $6,000 per acre. So the landowner was made whole here, and so the trial judge's decision really accords with that principle as set out in the city of Detroit. In conclusion, I would like to thank the court for the opportunity to address it here today and would request that the court affirm the decision to exclude Mr. Wilson as an appropriate exercise of the court's discretion, to preclude consideration of the landowner's highest and best use testimony also as an appropriate exercise of discretion, and to affirm the decision granting the government's motion for judgment as a matter of law because the only legally sufficient evidence was that offered by the government's appraiser, Mr. York, that just compensation was $10,000. Unless there are any other questions, the government will rest on the arguments and authorities in its brief. Thank you. Thank you, Your Honor. I think it comes back to my fundamental theme here, which is the case law we cite in our brief, that a jury may reject expert testimony even if uncontradicted and substitute its own common sense judgment for that of the expert in light of all the evidence in the case. The jury in this case wasn't allowed to do that. There's also another flaw in the ruling by the magistrate judge, which was one of the components for Rule 50A in a jury trial is to advise the plaintiff if there's a deficiency in the evidence and give them an opportunity to cure that deficiency. That did not occur in this case. In terms of the issue of highest and best use, there was evidence in the record that supported a hotel use as highest and best use, and our client did have the expertise to give that testimony, and he testified about the visibility of the site from the highway but for this power line, the lack of any hotel competition there, that the other hotels in the area were old and run down, that there was significant demand generators nearby including an industrial park, an Air Force base, an automotive plant, and also a large festival that's held annually called Bonnaroo, which brings about 200,000 people into the area. And he testified that one of these other hotels is in Daytona, Florida, and he testified about what a significant effect the Daytona 500 and other one-time event per year can have on the viability of the hotel. Their expert also indicated that he really didn't look into, to any great degree, whether it could be used as a hotel or not. He simply came to the conclusion that it was started as agricultural and that he essentially disregarded all the evidence that it could be used as a hotel. Again, I think it was a... He pointed out that utilities were a problem, water was a problem, soil was a problem. He assumed that they were, Judge. He didn't do a PERC test, for example. I mean, he did no investigation is the point I'm making. He came to certain conclusions, but there wasn't any basis for those conclusions. And that's why we think that the magistrate judge erred in just not letting the jury decide this case. That's what should have happened. And if the jury gave a verdict that was outside the bounds of the evidence, the court could have dealt with that, but the jury never had that chance. All right. Counsel, I asked you earlier, I said, did you appeal the issue of excluding your expert because his report did not comply with Federal Rule Civil Procedure 26? You said you did raise it in your brief. Can you tell me where in your brief? I have your brief in front of me. Where have you raised that issue? I can look at the brief, Judge. I asked you before, and you didn't. I've got your brief. You don't know where you... I don't have it memorized, Judge. My recollection was that we did raise that issue. I don't see it. If we didn't, Judge, then I apologize for the misstatement. It's not appealed, and that's an independent basis to exclude your expert. I mean, it's yours, right? It's waived. I'm not sure that it's... I think the two issues are intertwined. No, they're not. I mean, the court rule has specific requirements that must be in reports for an expert to testify. And the judge here said that your expert cannot be permitted to testify as to opinions and conclusions which were not included in his expert report. And we weren't asking him to. We were asking him to be permitted to testify to exactly what was in his report. And the judge concluded that the report was, as Judge Gillen pointed out, it was a short report, but it was because it was only on one specific point. We were not asking him, we were not proffering his testimony to come in and say anything about, you know, to do a feasibility study or demand generators. He was only going to make the one point that was in his report, which was, I believe that the presence of this power line disqualifies this as a hostile site based on my experience. That would have been the sum and substance of his testimony. Thank you. Thank you, Your Honor. Thank you for your time and attention. Thank you. And the case is submitted.